## THOMPSON VS. GOSSITT.

That a person was in feeble health at the time of selling land, is no cause for rescinding the contract of sale, in the absence of proof that he was legally incompetent, from mental imbecility, to make a valid contract.

Partial loss of memory, one of the infirmities incident to advanced age, does not render a person incapable of making contracts, while his other faculties remain unimpaired.

In the absence of mistake, fraud or want of capacity, satisfactorily made out, a court of chancery cannot relieve a person from the consequences of an improvident sale of his land.

*Appeal from Ouachita Circuit Court in Chancery.*

Hon. HARRIS FLANAGIN, Special Judge.

GALLAGHER, for appellant.

FARRELLY & FINLEY, for appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

The case made by the bill is, that Gossitt purchased of Thompson a number of tracts· of swamp land, at $225, and gave his obligation for the purchase money, payable in six, twelve and eighteen months, with ten per cent. interest, and took Thompson's bond for title, etc. On·the failure of Gossitt to pay the obligation first due, at maturity, Thompson brought ejectment against him for the lands, obtained judgment, and had sued out a writ of possession. etc. Complainant had tendered payment of the whole of the purchase money, counting the interest upon the obligation last falling due in advance to maturity, which Thompson refused to accept, and the money, with the costs of the ejectment suit, was brought into court; and the bill prayed for an injunction and specific performance of the contract of sale.

Thompson answered the bill, and made his answer a cross-bill, praying a rescision of the contract.

The principal grounds on which he asks a rescision of the contract of sale, may be stated in the language of his counsel here, which is expressed in terms as favorable to him as in the answer:

" He admits the giving of the title bond, and the receipt of the notes, but states that the amount represented by the notes was not the whole amount of the purchase money, for which he .agreed to sell the lands. That besides the $225, in notes, he ought to have received and been paid by Gossitt the sum of $362 *cash*. That it was only on these terms that he was willing, at the time, to sell the lands; that he thought he was to receive·that sum then; but by some mistake, which he can only account for by his low state of health and consequent mental imbecility at the time, he entirely forgot to mention this cash matter in the bond, or to receive it, or to even mention it at that time.

" That as soon as he recovered his health and mental ability,

he went to Gossitt, having examined the papers and seen how he had been deceived, or how great a mistake had happened, and tendered him full remuneration for what Gossitt had done on the land, and demanded a rescinding of the agreement, but Gossitt refused."

Gossitt's answer to the cross-bill does not seem as full and frank as it might have been, but he distinctly denies that he was to give any other consideration for the lands than that expressed in the notes and recited in the bond for title.

No witness heard the terms of sale as finally agreed upon between the parties. After some propositions were made and declined, in the presence of the witnesses, the parties went to themselves, conversed together some time, and then went into Gossitt's house, saying they had agreed. And Thompson commenced preparing the papers, and did not complete them until late at night, the trade having been made in the evening. He stayed all night with Gossitt, and left in the morning for home. The contract of sale was entered into 21st February, 1855, and it appears from Thompson's answer that he did not discover the mistake about the *cash* payment until the following July, after he had recovered his health, when he proposed to Gossitt to rescind the contract, and to compensate him for improvements which he had made on the lands, and he refused, etc.

The witnesses prove that Thompson was in feeble health at the time of the sale, but the evidence does not show that he was legally incompetent, from mental imbecility, to make a valid contract.

He is an old man, and one witness states that his memory was treacherous. He was in the habit of attending a number of the circuit courts in his section of the state; and before leaving home, would frequently lay out papers, and his spectacles, upon the table, to take with him, but forgot them, and after being gone for sometime, would return and get them, and again start upon his journey.

The partial loss of memory is one of the infirmities of advanced age, but such infirmity does not, in contemplation

of law, nor in fact, render the aged man incapable of making contracts, whilst the other faculties remain unimpaired.

According to the answer, the *cash* payment was to have been larger than the aggregate sum of the credit payments, and if the witnesses had proven that so much in cash was to have been paid, by the terms of the contract, we could readily believe that the memory of appellant must have been greatly decayed to have forgotten so important an item as the $362 *in cash*, not only when drawing the title bond, and reciting the terms of sale, but for months after.

That the appellant sold the land (taking the terms of sale to be correctly expressed in the bond for title) for much less than its value, there can be no doubt, from the evidence, but in the absence of mistake, fraud or want of capacity, satisfactorily made out, the court cannot relieve him from the consequences of an improvident sale.

The answer alleges that appellee made to appellant a false and fraudulent representation as to an order of the county court changing the direction of a public road, which ran over a portion of the land, and which induced appellant to agree to sell the lands for a less price than he would otherwise have taken.

One witness states that Gossitt, in a conversation with him, left the impression upon his mind that he had procured an order of court changing the road, but it does not appear that appellant was present, or heard the conversation.

If there was any fraud, on the part of Gossitt, in making the purchase, it is the misfortune of Thompson that he has been unable to draw from him a confession of it in the pleadings, or to establish it by sufficient evidence.

The decree must be affirmed.

Absent, Mr. Justice FAIRCHILD.